Tracy Taylor
B-facility
P.O. Box 7000
Crescent City, Ca 95532

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

Tracy Taylor
    Plaintiff

v

Michael Sayre, M.D. et al
    Defendants

REQUEST FOR
INSPECTION OF
PROPERTY

Civil Action
C 07-5295 MHP(pr)

        Plaintiff request, pursuant to Rule 34 of the Federal Rules of Civil Procedure, that Defendant Michael Sayre Produce for inspection, photograph the following item.

    1. One pair of insoles that medical at Pelican Bay State Prison issue to prisoners to wear.

    **PLEASE TAKE NOTICE** that the above requested property shall be produced for inspection and photograph in the Hobby shop in B-facility at Pelican Bay State Prison in Crescent City, California on May 23, 2008 at 10:00 Am Such Photograph's shall be taken and xeroxed four times each by Defendant: or their agents or employees and furnish to Plaintiff. For the convenience of the Defendants and so that money can be saved this inspection and photograph of property, the time and location shall be the same as the inspection of property done for Plaintiff insoles and arch supports photograph's

Dated: April, 17. 2008

Tracy Taylor/E-13981
B-facility
P.O. Box 7000
Crescent City, Ca, 95532

Tracy Taylor
B-Facility
P.o. Box 7000
Crescent City, Ca 95532

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

Tracy Taylor
   Plaintiff

   V.

Michael Sayre, M.D. et al

REQUEST FOR
ADMISSIONS

Civil Action No: LO7-5295MHP(pr

     In accordance with rule 36 of the Federal Rules of Civil Procedures Plaintiff request that Defendant Michael Sayre to admit to the below list of statements and the application of law to any fact listed below. Plaintiff further request that Defendant Michael Sayre admit that he agree'. Plaintiff requests that Defendant Michael Sayre answer the following admissions separately and fully in writing under oath. and that the admits: agrees or denials be signed by the person making them and be served on the plaintiff within 45 days of service hereof.

     The admissions shall be deemed continuing. So as to require supplemental admissions as new and different information materializes.

### FOLLOWING ADMISSIONS.

   1.  In the California Code of Regulations. Title 15 § 3084.7 (K) it states Permanent disability shall mean a disability/condition that is expected to last longer than six months. Do you admit that you agree that is what it says? (exh-1)

   2.  In the Armstrong-V-Schwarzenegger court ordered remedial plan. The federal court issued an order to not take away medically prescribed health care appliances. Do you admit that you agree that is what it says? (exh-2)

1

3.   when Plaintiff Tracy Taylor arrived at Pelican Bay State Prison on August 9, 2006 there existed in plaintiff's medical file a valid CDC-128 medical a recommendation that plaintiff wear special personal boots and arch supports, which was dated valid until September 21, 2006. Do you admit that this statement is true?. (exh-3)

4.   On August 9, 2006 when plaintiff Tracy Taylor arrived at Pelican Bay State Prison prison custody took away his medically prescribed Health Care Appliance (personal Boots and arch supports because the Boots had a metal Rod in them). Do you admit that this statement is true?.

5.   You refuse to recommend or order that I be given back the medically prescribed Health Care appliance (personal boots and arch supports) that was confiscated by prison custody, because the Boots had a metal Rod in them?. Do you admit that the statement is true?.

6.   On August 27, 2006 you recognized that plaintiff was in substantial chronic pain and recommended plaintiff use insoles in state shoes and that plaintiff take care not to walk without his shoes and insoles, Do you admit the statement is true? (exh-

7.   Pelican Bay State Prison issue to the General Population prisoners black tennis shoes which have insoles in them! Do you admit that the statement is true?.

8.   You reffered plaintiff to be seen by a physical therapist whom you met with, and or talked too and informed him to not recommend that plaintiff be allowed to wear his boots! Do you admit that the statement is true?.

9.   On October 10, 2006 Family Nurse Practioner Sheryl Skinner refered that plaintiff Tracy Taylor be seen by a license orthopedic doctor, and you cancelled that referal! Do you admit that the statement is true?. (exh-5)

10.   On December 12, 2006 The physical therapist in which you refered to see me assess me as having foot pain; hammer toes; halux valgus, the same diagnosis reached by Salinas valley Radiologist Inc. a medical group whom evaluated plaintiff on January 24, 2005! Do you admit that the statement is true?. (exh-6) and (exh-7)

11.   On December 12, 2006 the physical therapist whom you refered to see plaintiff recommended that plaintiff wear arch supports!. Do you admit that this is true? (exh-8)

12.   Shoe inserts or insoles are different from arch supports or arch supports that have been made from the mold of people feet!. Do you admit that the statement is true?.

13.   Before you recommended that plaintiff wear insoles in state shoes you throughly reviewed his medical file and saw the CDC 128 chrono dated August 15, 2001 written by physician Joseph V Pisione. M.D. and Daniel Thor, M.D whom recommended plaintiff Tracy Taylor wear shoe inserts and No Boots!. Do you admit that the statement is true. (exh-9)

14    Your recommendation of insoles in State shoes made on September 27, 2006 is the recommendation of services made on August 15, 2001 by Joseph V Piston, M.D and Daniel Thor. M.D.! Do you admit that the statement is true. (exh-18) and refer back to exh-9.

15.    Robert Horel. the warden of Pelican Bay State Prison in the past informed you that he did not want prisoners to retain the boots they have brought with them from other prisons!. Do you admit that this statement is true?.

16    Since you have recommended that plaintiff Tracy Taylor wear insoles in State Shoes you have received letters from the plaintiff informing you that he was still in pain and the insoles was not working! Do you admit that this statement is true! (exh's - 11 and 11-A)

17.    You are license as a medical surgeon!. Do you admit that the statement is true?.

18.    You are not license as a podiatrist, nor an orthopedic Doctor!. Do you admit that this statement is true?.

Date. April, 17 2008

Tracy    Taylor / E-13181
B- Facility
P.O. Box 7000
Crescent City Ca 95531

2

# CONTENT OF EXHIBITS

Exhibit- 1.   Copy of title 15 § 3084.7 (k).

Exhibit- 2.   Copy of the federal court order in the armstrong remedial plan.

Exhibit- 3.   Copy of CDC.128 medical chrono dated September 28, 2005.

Exhibit- 4.   Copy of physician's progress Notes dated September 27, 2006.

Exhibit- 5   Copy of physician's progress Notes dated October 16, 2006.

Exhibit- 6.   Copy of Physical Therapy Initial Assessment sheet dated December 12, 2006.

Exhibit- 7.   Copy of medical diagnosis, date of service January, 24, 2003.

Exhibit- 8   Copy of Physical Therapy Discharge Summary, dated December 12, 2006

Exhibit- 9.   Copy of CDC 128 medical chrono, dated August 15 2001

Exhibit- 10.  Copy of CDC 128 medical chrono, dated September 27, 2006.

Exhibit- 11.  Copy of Letter dated January 30, 2007.

Exhibit- 11-A. Copy of Letter dated March 13, 2007

Tracy Taylor

(3) If the inmate believes any act of reprisal resulted from the grievance, an appeal of the alleged reprisal may be filed through the department's normal appeal process.

(j) Civil Addict or Releasee Appeal.

(1) Civil addicts or releasees may appeal a staff recommendation for exclusion from the civil addict program, unless the recommendation is based on a commitment to prison, deportation or releasee-at-large status.

(2) If an appeal is not received prior to the end of the 15th calendar day from an appellant's receipt of written notice of the recommendation to exclude, all prepared documentation shall be forwarded to the committing court.

(3) The second level review shall be the final review.

(4) Time constraints for release appeals are:

(A) The assistant regional parole administrator shall complete the first level review within ten working days.

(B) The regional parole administrator shall complete the second level review within 15 working days.

(k) Disability Grievances. An inmate or parolee with a permanent disability who is requesting a reasonable modification or accommodation who has a discrimination complaint or grievance based on a permanent disability shall follow the procedures described in section 3085. For the purpose of this section, permanent disability shall mean a disability/condition that is expected to last longer than six months.

(l) Movie/Video Selection or Exclusion Appeals.

(1) Movies/videos which have been given a rating of other than "G," "PG," or "PG-13" by the Motion Picture Association of America shall not be approved for general inmate viewing, and will not be accepted for appeal.

(2) The informal and first level of appeal shall be waived for appeals related to the selection or exclusion of a "G," "PG," or "PG-13" rated or non-rated movie/video for viewing.

(3) An appellant dissatisfied with the second level review decision may file the appeal at third level.

(m) Joint Venture Program Employer Related Grievances.

(1) Any current or former Joint Venture Program inmate-employee who believes he/she has a grievance regarding a wage and hour or retaliation claim against a Joint Venture Employer shall submit the written grievance to the Joint Venture Program Chief.

(2) The Joint Venture Program Chief shall attempt to resolve all complaints.

(3) Time frames for filing grievances will be governed by the Division of Labor Standards Enforcement's (DLSE) statutes of limitations, including but not limited to Labor Code Section 98.7 and Code of Civil Procedure Sections 337, 338 and 339, for the appropriate type of complaint.

(4) If the inmate is dissatisfied with the Joint Venture Program Chief's decision, the inmate may file a complaint with the Labor Commissioner.

NOTE: Authority cited: Section 5058 and 10006(b), Penal Code. Reference: Sections 832.5, 5054 and 10006(b), Penal Code; Section 19583.5, Government Code; *Wolff* v. *McDonnell* (1974) 418 U.S. 539, 558–560; Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328; Section 35.107, Title 28, Code of Federal Regulations; Section 98.7, Labor Code; and Sections 337, 338 and 339, Code of Civil Procedure.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89. For prior history, see section 3325(c).

2. Certificate of Compliance as to 5-18-89 order including amendment of subsections (a) and (d) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. Editorial correction of printing errors in subsections (f)(1)(B) and (g)(2) (Register 92, No. 5).

4. Amendment of subsection (e)(4) and new subsections (h)(3), (i)(2)(c)1. and 2., and (k) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.

5. Certificate of Compliance as to 5-6-92 order including amendment of subsections (e)(4) and (i)(2)(C)1. transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).

6. New subsection (l) and amendment of Note filed 4-7-95 as an emergency pursuant to Penal Code section 5058; operative 4-7-95 (Register 95, No. 14). A Certificate of Compliance must be transmitted to OAL by 9-14-95 or emergency language will be repealed by operation of law on the following day.

7. Certificate of Compliance as to 4-7-95 order transmitted to OAL 6-26-95 and filed 7-25-95 (Register 95, No. 30).

8. New subsections (m)–(m)(3) and amendment of Note filed 6-28-96 as an emergency; operative 6-28-96 (Register 96, No. 26). A Certificate of Compliance must be transmitted to OAL by 1-6-97 or emergency language will be repealed by operation of law on the following day.

9. Editorial correction of subsection (m)(3) (Register 96, No. 51).

10. New subsections (m)–(m)(3) and amendment of Note refiled 12-19-96 as an emergency; operative 12-19-96 (Register 96, No. 51). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 5-28-97 or emergency language will be repealed by operation of law on the following day.

11. Repealer of subsection (a)(1)(D), amendment of subsections (a)(2)(A), (b)(2), (d)(4), (d)(4)(A) and (e)(1), repealer of subsections (h) and (h)(1), renumbering of old subsections 3084.7(h)(2) and (h)(3) to new subsections 3391(b) and (c), subsection relettering, and amendment of newly designated subsection (k) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 12-19-96 order, incorporating relettering from 12-23-96 order and further amending section and Note, transmitted to OAL 4-14-97 and filed 5-23-97 (Register 97, No. 21).

13. Repealer of subsection (a)(1)(D), amendment of subsections (a)(2)(A), (b)(2), (d)(4), (d)(4)(A) and (e)(1), repealer of subsections (h) and (h)(1), renumbering of old subsections 3084.7(h)(2) and (h)(3) to new subsections 3391(b) and (c), subsection relettering, and amendment of newly designated subsection (k) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

14. Editorial correction of subsection (j)(1) and History 13 (Register 97, No. 24).

15. Certificate of Compliance as to 5-29-97 order, including amendment of subsections (b)(2) and (k), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

16. New subsections (m)–(m)(4) and amendment of Note filed 9-13-2005; operative 9-13-2005 pursuant to Government Code section 11343.4 (Register 2005, No. 37).

## 3085. Americans With Disabilities Act.

No qualified inmate or parolee with a disability, as defined in Title 42, U.S.C. section 12102 shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the department, or be subjected to discrimination.

(a) CDC Form 1824 (1/95), Reasonable Modification Or Accommodation Request. If otherwise qualified or eligible, inmates or parolees with disabilities as defined in Title 42, U.S.C. section 12102 may request reasonable modification or accommodation to

(E) Second level review shall be conducted by the institution head, who may retain the appellant at the reception center as a second level re-view action and refer the appeal to the departmental review board for resolution. The board's decision shall constitute final review.

(F) If the appeal is denied at first or second level, the appellant may appeal at the third level.

(4) Involuntary transfer to the California Medical Facility or Atascadero State Hospital:

(A) Following a hearing on the psychiatric need for an involuntary transfer to the California Medical Facility or Atascadero State Hospital, the inmate shall be provided with a copy of the written decision pursuant to Section 3379(d).

(B) The inmate may appeal the written decision, directly to the third level, within 30 calendar days of receipt of the decision.

(C) A copy of the hearing decision shall be attached to the appeal.

(e) Lost or damaged personal property appeals.

(1) All property loss or damage arising from the same event or action shall be included in one appeal.

(2) Replacement or restoration of property.

(A) An attempt shall be made by staff to use local resources to substitute for, or replace lost property at no cost to the state, or to repair the item at institution expense.

(B) An appellant's refusal to accept repair, replacement, or substitution of like items and value shall be cause to deny the appeal.

(3) The document denying a property claim appeal at the third level shall inform the appellant of the right to file a claim directly with the board of control, and shall provide instructions for such filing.

(4) Reimbursement for loss. The reimbursement shall not exceed the limit imposed by property procedures and regulations (Subchapter 2, Article 9, Personal Property).

(A) Reimbursements for $100 or less shall require endorsement at either the second or third level of review.

(B) Reimbursements for more than $100 shall require both third level endorsement and Board of Control approval.

(C) Before payment of any granted claim, the appellant shall sign an Inmate/Parolee Board of Control Release Form, CDC Form 813 (rev. 2-86), discharging the state from further liability for the claim pursuant to Government Code section 965. The appellant shall be provided with a copy of the completed form.

(f) Re-Entry or Work Furlough Placement and Parole to County of Commitment Appeals. An inmate pending release to the community and dissatisfied with a parole staff decision regarding the release program or the location of placement may submit an appeal requesting administrative review of the decision.

(1) Re-entry or work furlough placement appeals.

(A) The informal level. Appeal of denial of placement into specific re-entry or work furlough locations shall be submitted by the appellant to the institution caseworker who prepared Section A of the Release Program Study, CDC Form 611 (rev. 10-88). The caseworker shall compare the assigned parole region's reasons for denial with the facts contained in the inmate's central file, interview the inmate, and record all information obtained on a CDC Form 128-B (rev. 4-74).

(B) The first level appeal shall be submitted to the appeals coordinator of the parole region where the denial of placement was made. A copy of the CDC Form 128-B (rev. 4-74) shall be attached to the appeal.

(C) The supervisor of the staff person who denied placement shall conduct the first level review and the regional parole administrator or designee shall conduct the any second level review.

(2) Return to county of commitment appeals.

(A) An appeal concerning parole to county of commitment shall not be accepted until the Release Program Study, CDC Form 611 (rev. 10-88), has been completed and returned to the institution.

(B) The appeal shall be sent to the appeals coordinator of the parole region where such study was completed. The informal level of review shall be waived.

(C) The assistant regional parole administrator shall provide the first level review and the regional parole administrator shall provide the second level review, if any.

(D) The inmate may appeal to third level if dissatisfied with second level response.

(g) Conditions of Parole Appeals. An inmate dissatisfied with conditions of parole imposed by departmental staff may submit an appeal requesting removal or change of the conditions.

(1) Within 15 working days following receipt of the decision outlining conditions of parole, the appellant shall submit the appeal form directly to the appeals coordinator of the parole region where the case is assigned.

(2) The informal and first level reviews shall be waived. The appeals coordinator shall forward the appeal to the regional parole administrator for second level review.

(3) An appellant dissatisfied with second level review decision, may file the appeal at third level.

(4) An appellant dissatisfied with a third level review decision may submit the appeal to the Board of Prison Terms pursuant to 15 CCR sections 2525 and 2526.

(h) Parole Period and Term Computation Appeals.

(1) Informal level review.

(A) The appellant shall submit the appeal to the records office for research and documenting of the relevant case facts. The appellant shall be provided a copy of the findings.

(B) The document recording denial of an appeal shall be hand-delivered to the appellant, who shall sign and date an Acknowledgement of Receipt, CDC Form 1031 (rev. 8-88).

(2) Formal appeal.

(A) The appellant may then submit to the appeals coordinator an appeal requesting a computation review hearing.

(B) First level review shall be waived. The computation review hearing shall constitute the second level of review.

(C) The case records manager or supervisor shall conduct a computation review hearing within 15 days following receipt of the appeal.

1. The inmate/parolee shall be notified at least 24 hours prior to the hearing via the CDC Form 1032 (Rev. 12/86), Notice of Time, Date and Place of Computation Review Hearing.

2. The hearing shall be held during the inmate's nonassigned hours.

(D) Upon staff determination an error exists which the department lacks authority to change, the appeal shall be granted and the appeal referred to the appropriate agency for disposition.

(E) The appellant shall be provided a copy of the Computation Review Hearing Decision, CDC Form 1033 (rev. 8-88), at the conclusion of the hearing.

(F) The appellant may submit the appeal to third level if dissatisfied with second level response.

(i) Prison Industry Authority Health and Safety Grievances.

(1) An appellant who believes a health or safety hazard exists in a prison industry operation shall submit the written grievance to the prison industry safety committee.

(2) If an industrial safety appeal is denied at the third level, the inmate may file an appeal with the labor commissioner as prescribed by the Division of Industrial Safety.

# PER FEDERAL COURT ORDER!

## (ARMSTRONG REMEDIAL PLAN)



## ~~DO NOT TAKE AWAY~~

### Medically Prescribed

## HEALTH CARE APPLIANCES

- During intake into ASU, SHU, or other disciplinary detention (DD) units.
- While housed in ASU, SHU, or other DD units.

### UNDER WHAT CONDITIONS MAY STAFF TAKE AWAY AN INMATE'S HEALTH CARE APPLIANCE?

- If the appliance poses an immediate threat to safety and security, e.g., altered or used as a weapon.
- When collecting the appliance as evidence in a crime or investigation (must be supported by documentation).
- If the senior custody officer on duty temporarily authorizes removal for reasons listed above.

### WHAT ~~PROTOCOLS~~ SHALL BE FOLLOWED IF AN INMATE'S HEALTH CARE APPLIANCE IS TAKEN AWAY?

- As soon as possible, at least by the next business day, the senior custody officer <u>shall</u> consult the Health Care Manager, Chief Medical Officer, or designee, about the inmate's physical need for the appliance, and a reasonable alternative in-cell accommodation(s).
- The senior officer in charge (AOD) <u>shall</u> inform the Warden or designee of the incident and the alternate means to accommodate the inmate.
- If the Warden or designee decides to retain the appliance, it <u>must</u> be stored in a designated location in the unit and provided to the inmate if needed when released from his/her cell for yard, escorts, visits, etc.
- The inmate <u>shall</u> be referred to the next scheduled classification committee hearing for confirmation of removal of the appliance, pending adjudication of the disciplinary charges.
- The necessity to continue the removal <u>shall</u> be reviewed by a classification committee at least every 90 days.
- The inmate shall be deprived of the appliance for only so long as the appliance continues to pose a direct threat to safety and security.



Exhibit 2

TAYLOP. T  CDC# E13981    C+=++6=+ C . - 2\\                CDC-128C

**MEDICAL RECOMMENDATION - [HCM] For medical reasons, the following special medical
recommendation is made:**
  Because of a foot condition, this Inmate may receive and wear his special personal boots and arch
supports he has from the outside, as long as there is no metal in it.

CC  Central File
    Assignment Lieutenant
    Housing Unit
    Counselor
    Inmate
    Health Record

Exhibit A  ℗
3

9/28/2005 8:20:00 AM  CSP-SAC

*Valid from 9/22/2005 until 9/21/2006*

**Gabriel Borges, D.O.**
*Physician and Surgeon*

MEDICAL-PSYCHIATRIC-DENTAL

ON 7-18-06 HAND HELD DETECTOR picked up
METAL. Shoes was X-RAYED. 2 METAL STRIPS
are MANUFACTURED IN RUBBER SOLE.

C/O K. LAMPKIN

## Assessment

### Medical Diagnosis

Code:   733.90        Description:   ORTHOPEDIC DISORDER

Axis:        GAF:        Status:   CURRENT        Provider:   SAYRE, MD, MICHAEL

Diagnosis Dt/Tm: 09-27-2006 1510        Resolve Dt/Tm:  00-00-0000 0000        Priority:

Notes:

possible, but questionable plantar fasciatilis

*Exhibit 8 4*
*4*

### Plan

Provider:   SAYRE, MD , MICHAEL        Plan Dt/Tm:   09-27-2006 1511        Completed By:

Completed Dt/Tm:        Patient Education:   N        Phone Order Status:   NONE

Entry Date: 09-27-2006 1511        Entered By: MPIMSMCS, SAYRE, MD

The consideration of plantar faciailtis would involve a treatment plan that would include NSAID's for pain, insoles for the standard state shoes, care that he not walk without the shoes and insoles, stretching exercises for the fascia which would be taught in 1 - 2 PT visits, and time.  He does not have flat feet.  He does not have a deformity of the feet.  He does not need any special housing accomodation or any other ADA accomodation.

UM for PT, 128 Chrono for insoles, and 1845 all have been issued.

### Order

*Exhibit 2 8*
*4*

|  | CDC #: E13981 |
|---|---|
| **PHYSICIAN'S PROGRESS NOTES** | **Name(L.F.M.S):**  TAYLOR, TRACY, LEE |
| CDC 7230 | |
| STATE OF CALIFORNIA        DEPARTMENT OF CORRECTIONS | |

*Page 5*

## Assessment

### Medical Diagnosis

Code  733.90     Description:   ORTHOPEDIC DISORDER

Axis:      GAF:       Status:   CURRENT     Provider:   JAIN, MD, BHAWNA

Diagnosis Dt/Tm: 09-19-2006 1255     Resolve Dt/Tm: 00-00-0000 0000     Priority:

Notes:


Code:  733.90     Description:   ORTHOPEDIC DISORDER

Axis:      GAF:       Status:   CURRENT     Provider:   SKINNER, FNP, SHERYL

Diagnosis Dt/Tm: 10-16-2006 1436     Resolve Dt/Tm: 00-00-0000 0000     Priority:

Notes:


Code:  999999     Description:   NURSING DIAGNOSIS

Axis:      GAF:       Status:   CURRENT     Provider:   ESCOBAR-JEREZ, RN, JOSEPH

Diagnosis Dt/Tm: 09-06-2006 1109     Resolve Dt/Tm: 00-00-0000 0000     Priority:

Notes:


### Plan

| Provider: SKINNER, FNP , SHERYL | Plan Dt/Tm:  10-16-2006 1448 | Completed By: |
|---|---|---|
| Completed Dt/Tm: | Patient Education:   N | Phone Order Status:   NONE |
| Entry Date: 10-16-2006 1437 | Entered By: MPIMSSDS, SKINNER, FNP | |

MPIMS reviewed.
1. Foot pain: Refer to visiting ortho @ PBSP for reevaluation re: PMHx of bilat. hallux valgus, w bunion deformity and hammertoes - w need for continuing use of arch supports and orthopedic boots. U/M requested.
2. F/U after appt w ortho.

Exhibit - 5

| PHYSICIAN'S PROGRESS NOTES | CDC #: E13981 |
|---|---|
| | Name(L.F.M.S): TAYLOR, TRACY, LEE |

CDC 7230
STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS

## Physical Therapy Initial Assessment

PATIENT'S NAME: Taylor, Tracy Lee     C.D.C. NUMBER: E/3981

REFERRING MD: _____

Diagnosis: Plantar Fasciitis

Subjective: Constant foot pain, standing, walking pain ↑ to ↓ 10⁰⁰ yard has to sit down. When wearing boots + arch supports pt does better

History: Patient is 38 years old. Reports chronic foot pain + heavy Orthopedic boot + arch support from previous institution. MD broy[?]

Tests: Paper work to support this

Other history: Ø

Appearance/posture: Narrow feet, Hammer toes L > R; Hallux valgus (B), Normal arches wt. bearing → arches decrease

STRENGTH:

| | | | | | | |
|---|---|---|---|---|---|---|
| DF (B) | 1 | 2 | 3 | ④ | 5 | giving way |
| eversion | 1 | 2 | 3 | ④ | 5 | |
| toe flexor | 1 | 2 | ③ | 4 | 5 | |
| " extensor | 1 | 2 | ③⁺ | 4 | 5 | |

ROM:
- ☐ Lumbar     ☐ Cervical
- Flex _____
- Ext _____
- R Side Bend _____
- L Side Bend _____
- R Rotation _____
- L Rotation _____

PAIN:

hyper sensitivity to light touch, gentle stretch.

☐ Central     ☐ Radicular
At rest 7-8 ___ 1/10
On Act /0 ___ 1/10

(R L)     ☐ Shoulder  ☐ Elbow  ☐ Hip  ☐ Knee  Toes/Ankle
Flex _____     grossly wnl
Ext _____
ABD _____
Int. Rotation _____
Ext. Rotation _____
Other _____

SENSATION:
☒ Intact     ☐ Diminished     ☐ Absent

FUNCTIONAL STATUS: ☒ Limited     ☐ WNL

Limited walking

☐ Working  No _____     ☐ Cell/yard calisthenics

ASSESSMENT: C/o (B) foot pain; Normal arches ō Narrow foot → looses some of arch when pt stands → mild hammer toes, Hallux valgus.

PROBLEMS: 1. Pain     2. Limited stand/walk tol.     3. ___

GOALS: 1. ↓ Pain     2. ↑ limited stand/walk tol.     3. ___

INITIAL TREATMENT: 1. HEP     2. instruction

TREATMENT PLAN: Frequency- 2 1 times. Duration- 1 weeks.
1. PT Ed     3. ___
2. HEP     4. ___

PROGNOSIS: ☐ Good     ☐ Fair     ☒ Poor

THERAPIST'S NAME: Patrick Dodge PT     DATE 12/12/06

PELICAN BAY
G.P. UNIT 45

LINAS VALLEY RADIOLOGISTS, IC.
A MEDICAL GROUP
559 Abbott Street • Salinas, California 93901
Telephone (408) 424-8041

HAROLD E. RUMBEL, M.D.
JAMES A. KOWALSKI, M.D.
RICHARD L. MATTSON, M.D.
DONALD A. CATALANO, M.D.

GILES A. DUESDIEKER, M.D.
MICHAEL E. BASSE, M.D.
DAVID A. STAUNTON, M.D.
GARY E. FALKOFF, M.D.

PATIENT NAME
**TRACY TAYLOR**

ACCOUNT NO
**9147199**

RADIOLOGY NUMBER
**9147199**

AT THE REQUEST OF
~~GARY HAFFNER MD~~
~~34825 HIGHWAY 101~~
~~SOLEDAD, CA 93960~~

*Should be Dr. Krystal*

DATE OF BIRTH
**06/10/1968**

AGE/SEX
**34/M**

DATE OF SERVICE
**01/24/2003**

(OUTSIDE INTERPRETATION)

**LEFT FOOT**

HISTORY:   Hallux valgus bunion deformity left foot.  Hammertoe deformities digits 2 to 5, left foot.
Comparison from 4/19/01.

FINDINGS: Flexion is noted at the second, third and fourth PIP and DIP joints on the lateral film.  The
fifth digit is not well visualized on the lateral.  Minimal hallux valgus with minimal marginal spurring
and hypertrophic changes of the first metatarsal head.  Mild soft tissue prominence adjacent to the first
metatarsophalangeal joint.  Normal bone density.  Soft tissues are unremarkable.  Findings suggestive
of degenerative spurring of the dorsal talus, navicular and distal anterior aspect of the tibia.  There is
mild spurring of the calcaneus at the Achilles' tendon attachment.

CONCLUSION:

1.    Minimal hallux valgus with minimal hypertrophic changes as noted above.

2.    Possible hammertoes of the second to fourth digits.

3.    Degenerative spurring of the tibia, talus, navicular, and calcaneus.

Thank you for referring your patient to us,

*B. Misa Hosohama*
B. Misa Hosohama, MD
BMH/js
2/2/03

*Exhibit-7b*

FEB 0 8 2003

# Physical Therapy Discharge Summary

Patient's name _Taylor, Tracy Lee_   CDC Number _E13981_

Diagnosis _(B) Plantar Fasciitis_

Dates seen _12-12-06_ to _____ Number of treatments _1_ Refusals _0_

Pain scale:   Rest   1 / 10 _7-8_

Activity   1 / 10 _10_

Progress made _Briefly showed pt stretches for feet, + use of handball for foot massage._

Impairments remaining _Pain with weight bearing; light touch, mild hammer toes, Halux Velgus. Pt loses 5% of arch c weight bearing._

Recommendations / follow up _Pt would benefit from arch supports, Box toe to accommodate toes. Not receptive to additional therapy_

_Patrick Doolynn PT_

Therapists Name

_12-12-06_

Date

Exhibit - 8

SALINAS VALLEY STATE PRISON

AME: TAYLOR, TRACY                    CDC#: E1398i⁻   · ⁻  HSG: C5-216L

Renew Chrono of 04/06/01, for arch suppport shoe inserts (for pes planus and pronation) x one (1) year.  No Boots from outside.  This must conform to custody regulations.

_Pistone_        8/28/01_  Date:                                                    Date

JOSEPH V. PISTONE, M.D.                  DANIEL THOR, M.D.
Contract Physician                       Medical Director
                                         Salinas Valley State Prison

Orig:    Health Record
cc:      C-file
         Facility housing Sgt.
         CCI
         Inmate
Date:  August 15, 2001   JVP/rr   08/27/01

DELIVERED NOV 0 7 2001

EXhibit 9.

SALINAS VALLEY STATE PRISON

09/29/2006 14:32 FAX                                     (Page 20)          ☑ 001/001

Name & Number:   **TAYLOR, TRACY**          **E13981**          **A2-106L**          **CDC-128C**

Due to a medical condition, please allow this patient insoles to be used in state approved shoes for the duration of one (1) year.
EXPIRES: 09/27/07 (Written by M. Sayre, M.D.)

Original:    Medical Records

cc:    Unit Sgt.    Inmate
       CCII-Fac    C-File                     MICHAEL SAYRE, M.D.
       Specialty Clinic                       Chief Medical Officer


Written: 09/27/06
Typed: 09/29/06      **TAYLOR, TRACY**          **E13981**          **PBSP/dk**          **MEDICAL**


Exhibit-10

Exhibit-11                                                    Pg #4

Tony Taylor E-13481
A4-214
P.O.Box 7000
Crescent City, Ca 95532

Too Whom it may concern: Robert A. HOREL (warden of Pelican Bay State Prison), Michael C. Sayre, M.D (chief Medical doctor of Pelican Bay State Prison), James Tilton (Director of the Department of Corrections and Rehabilitation)

I'm a mobility impared prisoner, I use a Health Care appliance to be able to walk without pain, My medical condition significantly affect my daily activities, for over 20 years I've been mobility impaired, and on 8-9-06 I arrived here at P.B.S.P wearing my Health Care appliance which I obtained legally while in the department. Custody took my Health Care appliance in violation of a federal court order (armstrong remedial plan) which order custody to not take away my Health care appliance. and Title 15 3358 (b) which state my orthopedic appliance shall not be taken if obtained legally while in the department. I have documentation to show I obtained the appliance from vendor that's license to do so and has a contract with DOCR.

CMO Sayre (a medical surgeon) illegally represented himself as a podiatrist and committed unethical acts against me while I was in waist chains. Mr. Sayre has went against the recommendations of license Podiatrist and orthopedic doctors and he refuses to allow me to use my medical appliance and he is personally stopping me from being seen by a podiatrist or orthopedic doctor while I'm housed in this prison. I have tried to file a acts against custody taking my appliance and custody but both Appeal Coordinators L.E. Wilber and J.J Kravitz is stopping me from doing so being a citizen complaint (CHOMULI) covers any appeal I file on medical so they refuse to process my appeals.

I'm suffering chronic and substantial pain and have been doing so since 8-9-06. I have been unable to participate in daily activities or go to the yard.

I am notifying you that my condition is getting worst and I am in need of immediate medical care and I need to see a podiatrist or orthopedic doctor for treatment because Dr. Sayre Recommended treatment was clearly inadequate. My pain is such that I'm on the verge of doing what ever I need to do in order to get transfered from this prison. please help me receive adequate medical care.

Yc
C.A.H
M.C.S
J.T
T.L.T

Date 1-30-07

Exhibit - # II

Tracy Taylor E-13481
A4-222
P.O. Box. 7000
Crescent City Ca 95532

Exhibit- B 11-A

Medical Authorization Review Committee
Pelican Bay State Prison (CTC)

Dear Medical Authorization Review Committee.

I'm mobility impaired and suffer chronic and substantial pain in my feet. and need adequate treatment. I arrived on 8-9-06 with wearing a prescribed orthopedic appliance that was taken away by custody. I have been seen by twice podiatrist whom all recommend I wear custom fitted arch supports and boots for my condition. ( 3-12-01 at S.U.S.P. and 7-2-04 at C.S.P.-sac). I've had an x-ray of my feet to verify my disability. ( 12-24-00 at S.V.S.P.) I have worn orthopedic boots for my disability (as documented) from 1999 to my arrival here at PBSP on 8-9-06. per title 15B 3084-7(k) this makes my disability/condition permanent. On 4-27-06 I was seen by Mr. Sayre (a medical surgeon) whom introduced himself as a podiatrist. and against my objections and will Mr. Sayre had custody take off my shoes and socks. and he looked at my feet and said it is the warden policy to not let inmates wear orthopedic boots they received from another prison. so I won't be allowed to wear orthopedic boots and instead Mr. Sayre recommended I wear insole's and be treated by a physical therapist. A doctor Thor tried that very same medical treatment in 2001 and had to reverse his treatment because it was inadequate (see appeal SUSP-D1-04544). On 12-12-06 I was seen by the physical therapist that Dr. Sayre recommended and that therapist stated he could not help me and recommended I wear pc custom fitted arch supports. he did not recommend the boots because Dr. Sayre instructed him not to do so. On 1-24-07 I was seen on a follow up to therapist by FNP. Skinner who recommended that I be seen by a podiatrist. and was going to submit that request to you the MARC however on fet 2-28-07 at 12.06 nm FNP Skinner brought me back to f-fac clinic and informed me that even though the therapist recommended I receive personal fitted arch supports and she wants to recommend that I be seen by a podiatrist, that Dr. Sayre personally informed her that under no circumstance will I be allowed to see a podiatrist, or be allowed to wear orthopedic appliance. I have been also informed that documentation verifying I'm mobility impaired and my Health Care directive that listed a Ms McDowell as my personal physician has been taken out of my medical file and lost.

My need for orthopedic boots is supported by outcome data as effective medical care. I am suffering chronic substantial pain in my feet. I am now requesting that you the (MAR) committee approve me to be seen by a license podiatrist for recommended treatment. I am in sever and chronic pain, my condition is worsening and pain increasing. Please help me receive medical care.

c/c
MAR - committee
Medical records
T. L. T.

Date March 13 2007

Tracy Taylor

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _Tracy Taylor_ , declare:

I am over 18 years of age and a party to this action. I am a ~~resident~~ prisoner of

_• Pelican Bay State Prison_ Prison,

in the county of _Del Norte_ ,

State of California. My prison address is: _B Facility; P.O. Box 7000;_

_Crescent City, California, 95532_ .

On_____ _April_ ,
                            (DATE)

I served the attached: _Plaintiff first set of Interrogatories; Request for inspection of_

_property, and request for admissions with accompaning exhibits 1 - through - 6_
                            (DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

Robert Horel (warden of Pelican Bay State Prison)
5905 Lake Earl Drive
P O Box 7000
Crescent City, Ca 95531

Office of the Clerk, U.S. District court
Northern District of California
450 Golden Gate Avenue
San Francisco, Ca 94102

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _April, 17 2008_                          _____
                (DATE)                                    (DECLARANT'S SIGNATURE)

Civ-69 (Rev. 9/97)                                        ::ODMA\PCDOCS\WORDPERFECT\22832\1

# ORIGINAL

In PROPRIA PERSONAM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Tracy Lee Taylor
    Plaintiff

                                              PLAINTIFFS FIRST
                                              SET OF
                                              INTERROGATORIES

    vs

                                              Civil Action No. C 07-5295 MHP(PR)

Robert Horel, warden, et. al.

In accordance with rule 33 of the Federal Rules of Civil Procedures. Plaintiff requests that defendant Robert Horel, warden answer the following interrogatories separtely and fully in writing under oath and that the answers be signed by the person making them and be served on plaintiff within 45 days of Service hereof.

In responding to these interrogatories, furnish all information which is available to you including information in the possession of your attorneys or investigators for your attorneys, and not merely information known of your own personal knowledge.

If you can not answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state, and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions.

These interrogatories shall be deemed continuing so as to require supplemental answers as new and different information materializes.

1. Do you and doctor Sayre hold meetings ?.

2. Have you ever issued via memorandum and or letter any rules, procedures and or policies on Health Care appliances ?.

3. If yes, provide every memorandum and or letter that you have issued since your time as warden at Pelican Bay state Prison ?.

4. Are you authorize to get involved in medical procedures and or policies ?

5. If yes, then provide the documentation that give that authorization ?.

6. Are you aware of the departmental regulations on health Care appliances ?

7. are you mandated to follow departmental procedures and or regulations on health Care appliances?

8. did you dispose, and or authorize the disposal of plaintiff health Care Appliance because the health Care applice has metal in it ?.

9. Do you have authority to destroy and or dispose of prisoners health Care appliances?

10. If yes, then, provide the documents that authorize the destruction and or disposal of prisoners health Care appliances?.

11. What rule, and or regulation, if any, gives you authorization to destroy and or dispose of prisoners health Care appliances before exhaustion of administrative remedies?.

Dated: April, 17 2008

Tracy Taylor
E-13781 / B- Facility
P.O. Box 7000
Crescent City, Ca 95531

(2)

Tracy Taylor E-153..
B- Facility
P. O. Box 7000
Crescent City, Ca 95531

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Tracy Taylor
    Plaintiff

    V

Robert Horel-warden, et al
    Defendants.

REQUEST FOR
INSPECTION OF
PROPERTY

Civil Action No.

C 07-5295 MHP (pr)

       Plaintiff request, pursuant to Rule 34 (a) of the Federal Rules of Civil Procedure, that Defendant Robert Horel, produce a Photographer to take pictures of the following evidence.

    1. One pair of regular shoe insole's.

    2. One pair of old arch supports.

    PLEASE TAKE NOTICE that the above request for Photographer to take pictures shall take place in the Hobby Shop in B-facility at Pelican Bay State Prison in Crescent City California on May 23, 2008 at 10:00 A.M. such photographs shall be taken, and xeroxed four times each by the defendants or their agents or employees and furnished to plaintiff.

    The insoles come from an old pair of regular shoes, the insoles are similar to the insoles that defendant. Michael sayre recommended that plaintiff wear! and the arch supports come from an old pair of boots that plaintiff wore only during his religious exercise's. however, nevertheless the boots had came with custom fit arch supports, when plaintiff arrived at Pelican Bay State Prison custody kept all of my religious items but sent plaintiff the old worn out arch supports! still the arch supports are crucial to plaintiff defense which will show the actual difference between insoles and arch supports. Plaintiff being a prisoner and now being housed in a program called Behavior Modification Unit. I am now denied direct access to the law library and no interaction with no other prisoners and almost all property including legal books have been seized and immediatly destroied. Plaintiff has no way to photograph these items personally.

Dated: April 17 2008

Tracy Taylor E-15331
B Facility
P.O. Box 7000
Crescent City Ca 95531

(1)

Tracy Lee Taylor (E-23081)
B-Facility
P.O. Box 7000
Crescent City, Ca 95534

# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA


Tracy Lee Taylor                                    REQUEST FOR
          Plaintiff                                 ADMISSIONS


          V.                                        Civil Action No. C07-5295MHP(pr)

Robert Horel, warden, et al
          Defendants


        In accordance with rule 36 of the Federal Rules of civil procedures
Plaintiff request that Defendant Robert Horel, admit to the below list of
statements and the application of law to any fact listed below. Plaintiff further request
that Defendant **Robert Horel** answer the following admissions seperately and fully in
writing under oath and that the admits, agrees or denials be signed by the person
making them and be served on the plaintiff within 45 days of service hereof.
        The admissions shall be deemed continuing so as to require
supplemental admissions as new and different information materializes.

                    FOLLOW ADMISSIONS

        1,    In California Code of Regulations, title 15 § 3084.7 (k) it states
permanent disability shall mean a disability/condition that is expected to last
longer than six months. Do you admit that you agree that is what it says? (ex-1)

        2,    In the Armstrong v. Schwarzenegger remedial plan, the federal
court issued an order to not take away medically prescribed health care
appliances. Do you admit that you agree that is what it says? (ex-2)

1

3    Plaintiff Tracy Taylor orthopedic boots and arch support were disposed of before plaintiff Tracy Taylor administrative remedies were exhausted at the Directors level of appeal!. Do you admit that the Statement is true? (ex-3)

4.    You refused to allow plaintiff Tracy Taylor to be given back his medically prescribed health care appliance (personal boots and arch support) because the boots had metal Rods in them! Do you admit that the statement is true?

5.    California Code of Regulations.. title 15 § 3358 (b) State no inmate shall be deprived of a prescribed orthopedic or prosthetic appliance in the inmate possession upon arrival into the department's custody or properly obtained while in the Departments custody unless a department Physician or Dentist determines the appliances shall be no longer needed and the inmates **PERSONAL** physician, if any concurs in an opinion   Do you admit that you agree that is what **it** says?. (ex-4)

6.    you are not a physician!. Do you admit that the statement is true?.

7.    Rules that Govern Health Care Appliance's are contained in the Armstrong v. Schwarzenegger court order remedial plan; california code of Regulations, title 15 § 3358 (a), (b) and (c), and Departmental Operation Manual 54030.11 and 54030.11.1. Do you admit that you agree that is true?(ex-5)

8.    Nothing that is in the rules which govern health care appliance's authorize you to dispose or destroy prisoners health care appliance's!. Do you admit that the statement is true?. (ex 3, 4, and 5)

9.    California Code of Regulations title 15 3006 (d) States. Anything in the possession of the inmate which is not contraband **but** will, if retained in the possession of the inmate, present a serious threat to facility Security or the safety of inmates and staff, shall be controlled by staff to the degree necessary to eliminate the ~~threat~~ threat!. Do you admit that you agree that is what it says?. (ex-6)

10.    Inmates personal property is purchase from quarterly packages and Health Care Appliance's are purchased through a special purchase and is excluded from the six cubic feet that personal property is confind to. and therefore the two have different criteria!. Do you admit that you agree that the statement is true?.

11.   Departmental Operational Manuel 54030.7.1  Next to Noie: State the approval for personal property package vendors does not apply to special purchase vendors!  Do you admit that you agree that is what it says? (ex6)

12.   During a meeting between you and Michael Sayre, M.D. you instructed him to not approve inmates to have there boots that they have brought from other prisons.  Do you admit that the statement is true?

Date: April 17, 2008

Tracy Turner E-13181
B-Facility
P. O. Box 7000
Crescent City Ca 95532

3

ORIGINAL

CONTENTS OF EXHIBITS
TO REQUEST FOR ADMISSIONS

Exhibits 1 thru - 6

Exhibit. 1. Copy of title 15 § 3084.7 (K)

Exhibit. 2. Copy of Federal court order of the Armstrong remedial plan.

Exhibit. 3. Inmate appeal grivance Number PBSP. A-06-02792, Warden's level decision.

Exhibit. 4. Copy of title 15 § 3358 (a), (b), and (c).

Exhibit. 5. Copy of Departmental Operational Manual. 54030.11 and 54030.11.1

Exhibit. 6. Copy of title 15 § 3006 (d).

Tracy Taylor

§ 3085                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    **TITLE 15**

(3) If the inmate believes any act of reprisal resulted from the grievance, an appeal of the alleged reprisal may be filed through the department's normal appeal process.

(j) Civil Addict or Releasee Appeal.

(1) Civil addicts or releasees may appeal a staff recommendation for exclusion from the civil addict program, unless the recommendation is based on a commitment to prison, deportation or releasee-at-large status.

(2) If an appeal is not received prior to the end of the 15th calendar day from an appellant's receipt of written notice of the recommendation to exclude, all prepared documentation shall be forwarded to the committing court.

(3) The second level review shall be the final review.

(4) Time constraints for releasee appeals are:

(A) The assistant regional parole administrator shall complete the first level review within ten working days.

(B) The regional parole administrator shall complete the second level review within 15 working days.

(k) Disability Grievances. An inmate or parolee with a permanent disability who is requesting a reasonable modification or accommodation who has a discrimination complaint or grievance based on a permanent disability shall follow the procedures described in section 3085. For the purpose of this section, permanent disability shall mean a disability/condition that is expected to last longer than six months.

(l) Movie/Video Selection or Exclusion Appeals.

(1) Movies/videos which have been given a rating of other than "G," "PG," or "PG-13" by the Motion Picture Association of America shall not be approved for general inmate viewing, and will not be accepted for appeal.

(2) The informal and first level of appeal shall be waived for appeals related to the selection or exclusion of a "G," "PG," or "PG-13" rated or non-rated movie/video for viewing.

(3) An appellant dissatisfied with the second level review decision may file the appeal at third level.

(m) Joint Venture Program Employer Related Grievances.

(1) Any current or former Joint Venture Program inmate-employee who believes he/she has a grievance regarding a wage and hour or retaliation claim against a Joint Venture Employer shall submit the written grievance to the Joint Venture Program Chief.

(2) The Joint Venture Program Chief shall attempt to resolve all complaints.

(3) Time frames for filing grievances will be governed by the Division of Labor Standards Enforcement's (DLSE) statutes of limitations, including but not limited to Labor Code Section 98.7 and Code of Civil Procedure Sections 337, 338 and 339, for the appropriate type of complaint.

(4) If the inmate is dissatisfied with the Joint Venture Program Chief's decision, the inmate may file a complaint with the Labor Commissioner.

NOTE: Authority cited: Section 5058 and 10006(b), Penal Code. Reference: Sections 832.5, 5054 and 10006(b), Penal Code; Section 19583.5, Government Code; *Wolff* v. *McDonnell* (1974) 418 U.S. 539, 558–560; Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328; Section 35.107, Title 28, Code of Federal Regulations; Section 98.7, Labor Code; and Sections 337, 338 and 339, Code of Civil Procedure.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89. For prior history, see section 3325(c).

2. *Certificate of Compliance as to* 5-18-89 order including amendment of subsections (a) and (d) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. Editorial correction of printing errors in subsections (f)(1)(B) and (g)(2) (Register 92, No. 5).

4. Amendment of subsection (e)(4) and new subsections (h)(3), (i)(2)(c)1. and 2., and (k) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.

5. Certificate of Compliance as to 5-6-92 order including amendment of subsections (e)(4) and (i)(2)(C)1. transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).

6. New subsection (l) and amendment of Note filed 4-7-95 as an emergency pursuant to Penal Code section 5058; operative 4-7-95 (Register 95, No. 14). A Certificate of Compliance must be transmitted to OAL by 9-14-95 or emergency language will be repealed by operation of law on the following day.

7. Certificate of Compliance as to 4-7-95 order transmitted to OAL 6-26-95 and filed 7-25-95 (Register 95, No. 30).

8. New subsections (m)–(m)(3) and amendment of Note filed 6-28-96 as an emergency; operative 6-28-96 (Register 96, No. 26). A Certificate of Compliance must be transmitted to OAL by 1-6-97 or emergency language will be repealed by operation of law on the following day.

9. Editorial correction of subsection (m)(3) (Register 96, No. 51).

10. New subsections (m)–(m)(3) and amendment of Note refiled 12-19-96 as an emergency; operative 12-19-96 (Register 96, No. 51). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 5-28-97 or emergency language will be repealed by operation of law on the following day.

11. Repealer of subsection (a)(1)(D), amendment of subsections (a)(2)(A), (b)(2), (d)(4), (d)(4)(A) and (e)(1), repealer of subsections (h) and (h)(1), renumbering of old subsections 3084.7(h)(2) and (h)(3) to new subsections 3391(b) and (c), subsection relettering, and amendment of newly designated subsection (k) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 12-19-96 order, incorporating relettering from 12-23-96 order and further amending section and Note, transmitted to OAL 4-14-97 and filed 5-23-97 (Register 97, No. 21).

13. Repealer of subsection (a)(1)(D), amendment of subsections (a)(2)(A), (b)(2), (d)(4), (d)(4)(A) and (e)(1), repealer of subsections (h) and (h)(1), renumbering of old subsections 3084.7(h)(2) and (h)(3) to new subsections 3391(b) and (c), subsection relettering, and amendment of newly designated subsection (k) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

14. Editorial correction of subsection (j)(1) and History 13 (Register 97, No. 24).

15. Certificate of Compliance as to 5-29-97 order, including amendment of subsections (b)(2) and (k), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

16. New subsections (m)–(m)(4) and amendment of Note filed 9-13-2005; operative 9-13-2005 pursuant to Government Code section 11343.4 (Register 2005, No. 37).

**3085.  Americans With Disabilities Act.**

No qualified inmate or parolee with a disability, as defined in Title 42, U.S.C. section 12102 shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the department, or be subjected to discrimination.

(a) CDC Form 1824 (1/95), Reasonable Modification Or Accommodation Request. If otherwise qualified or eligible, inmates or parolees with disabilities as defined in Title 42, U.S.C. section 12102 may request reasonable modification or accommodation to

(E) Second level review shall be conducted by the institution head, who may retain the appellant at the reception center as a second level re-view action and refer the appeal to the departmental review board for resolution. The board's decision shall constitute final review.

(F) If the appeal is denied at first or second level, the appellant may appeal at the third level.

(4) Involuntary transfer to the California Medical Facility or Atascadero State Hospital:

(A) Following a hearing on the psychiatric need for an involuntary transfer to the California Medical Facility or Atascadero State Hospital, the inmate shall be provided with a copy of the written decision pursuant to Section 3379(d).

(B) The inmate may appeal the written decision, directly to the third level, within 30 calendar days of receipt of the decision.

(C) A copy of the hearing decision shall be attached to the appeal.

(e) Lost or damaged personal property appeals.

(1) All property loss or damage arising from the same event or action shall be included in one appeal.

(2) Replacement or restoration of property.

(A) An attempt shall be made by staff to use local resources to substitute for, or replace lost property at no cost to the state, or to repair the item at institution expense.

(B) An appellant's refusal to accept repair, replacement, or substitution of like items and value shall be cause to deny the appeal.

(3) The document denying a property claim appeal at the third level shall inform the appellant of the right to file a claim directly with the board of control, and shall provide instructions for such filing.

(4) Reimbursement for loss. The reimbursement shall not exceed the limit imposed by property procedures and regulations (Subchapter 2, Article 9, Personal Property).

(A) Reimbursements for $100 or less shall require endorsement at either the second or third level of review.

(B) Reimbursements for more than $100 shall require both third level endorsement and Board of Control approval.

(C) Before payment of any granted claim, the appellant shall sign an Inmate/Parolee Board of Control Release Form, CDC Form 813 (rev. 2-86), discharging the state from further liability for the claim pursuant to Government Code section 965. The appellant shall be provided with a copy of the completed form.

(f) Re-Entry or Work Furlough Placement and Parole to County of Commitment Appeals. An inmate pending release to the community and dissatisfied with a parole staff decision regarding the release program or the location of placement may submit an appeal requesting administrative review of the decision.

(1) Re-entry or work furlough placement appeals.

(A) The informal level. Appeal of denial of placement into specific re-entry or work furlough locations shall be submitted by the appellant to the institution caseworker who prepared Section A of the Release Program Study, CDC Form 611 (rev. 10-88). The caseworker shall compare the assigned parole region's reasons for denial with the facts contained in the inmate's central file, interview the inmate, and record all information obtained on a CDC Form 128-B (rev. 4-74).

(B) The first level appeal shall be submitted to the appeals coordinator of the parole region where the denial of placement was made. A copy of the CDC Form 128-B (rev. 4-74) shall be attached to the appeal.

(C) The supervisor of the staff person who denied placement shall conduct the first level review and the regional parole administrator or designee shall conduct the any second level review.

(2) Return to county of commitment appeals.

(A) An appeal concerning parole to county of commitment shall not be accepted until the Release Program Study, CDC Form 611 (rev. 10-88), has been completed and returned to the institution.

(B) The appeal shall be sent to the appeals coordinator of the parole region where such study was completed. The informal level of review shall be waived.

(C) The assistant regional parole administrator shall provide the first level review and the regional parole administrator shall provide the second level review, if any.

(D) The inmate may appeal to third level if dissatisfied with second level response.

(g) Conditions of Parole Appeals. An inmate dissatisfied with conditions of parole imposed by departmental staff may submit an appeal requesting removal or change of the conditions.

(1) Within 15 working days following receipt of the decision outlining conditions of parole, the appellant shall submit the appeal form directly to the appeals coordinator of the parole region where the case is assigned.

(2) The informal and first level reviews shall be waived. The appeals coordinator shall forward the appeal to the regional parole administrator for second level review.

(3) An appellant dissatisfied with second level review decision, may file the appeal at third level.

(4) An appellant dissatisfied with a third level review decision may submit the appeal to the Board of Prison Terms pursuant to 15 CCR sections 2525 and 2526.

(h) Parole Period and Term Computation Appeals.

(1) Informal level review.

(A) The appellant shall submit the appeal to the records office for research and documenting of the relevant case facts. The appellant shall be provided a copy of the findings.

(B) The document recording denial of an appeal shall be hand-delivered to the appellant, who shall sign and date an Acknowledgement of Receipt, CDC Form 1031 (rev. 8-88).

(2) Formal appeal.

(A) The appellant may then submit to the appeals coordinator an appeal requesting a computation review hearing.

(B) First level review shall be waived. The computation review hearing shall constitute the second level of review.

(C) The case records manager or supervisor shall conduct a computation review hearing within 15 days following receipt of the appeal.

1. The inmate/parolee shall be notified at least 24 hours prior to the hearing via the CDC Form 1032 (Rev. 12/86), Notice of Time, Date and Place of Computation Review Hearing.

2. The hearing shall be held during the inmate's nonassigned hours.

(D) Upon staff determination an error exists which the department lacks authority to change, the appeal shall be granted and the appeal referred to the appropriate agency for disposition.

(E) The appellant shall be provided a copy of the Computation Review Hearing Decision, CDC Form 1033 (rev. 8-88), at the conclusion of the hearing.

(F) The appellant may submit the appeal to third level if dissatisfied with second level response.

(i) Prison Industry Authority Health and Safety Grievances.

(1) An appellant who believes a health or safety hazard exists in a prison industry operation shall submit the written grievance to the prison industry safety committee.

(2) If an industrial safety appeal is denied at the third level, the inmate may file an appeal with the labor commissioner as prescribed by the Division of Industrial Safety.

# PER FEDERAL COURT ORDER!
### (ARMSTRONG REMEDIAL PLAN)



## DO NOT TAKE AWAY
### Medically Prescribed
## HEALTH CARE APPLIANCES

- During intake into ASU, SHU, or other disciplinary detention (DD) units.
- While housed in ASU, SHU, or other DD units.

### UNDER WHAT CONDITIONS MAY STAFF TAKE AWAY AN INMATE'S HEALTH CARE APPLIANCE?

- If the appliance poses an immediate threat to safety and security, e.g., altered or used as a weapon.
- When collecting the appliance as evidence in a crime or investigation (must be supported by documentation).
- If the senior custody officer on duty temporarily authorizes removal for reasons listed above.

### WHAT PROTOCOLS SHALL BE FOLLOWED IF AN INMATE'S HEALTH CARE APPLIANCE IS TAKEN AWAY?

- As soon as possible, at least by the next business day, the senior custody officer shall consult the Health Care Manager, Chief Medical Officer, or designee, about the inmate's physical need for the appliance, and a reasonable alternative in-cell accommodation(s).
- The senior officer in charge (AOD) shall inform the Warden or designee of the incident and the alternate means to accommodate the inmate.
- If the Warden or designee decides to retain the appliance, it must be stored in a designated location in the unit and provided to the inmate if needed when released from his/her cell for yard, escorts, visits, etc.
- The inmate shall be referred to the next scheduled classification committee hearing for confirmation of removal of the appliance, pending adjudication of the disciplinary charges.
- The necessity to continue the removal shall be reviewed by a classification committee at least every 90 days.
- The inmate shall be deprived of the appliance for only so long as the appliance continues to pose a direct threat to safety and security.



Exhibit 3    Pg 57

| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

DATE:  **JAN 2 3** 2007

Inmate TAYLOR, E-13981
Pelican Bay State Prison
Facility A, General Population
Building 4, Cell 222

RE:    WARDEN'S LEVEL DECISION                    APPEAL: DENIED
       APPEAL LOG NO. PBSP-A-06-02792             ISSUE: PROPERTY

This matter was reviewed by ROBERT A. HOREL, Warden, at Pelican Bay State Prison (PBSP).
Correctional Sergeant S. Bradley interviewed the inmate on November 20, 2006, at the First Level of Appeal
Review.

## ISSUES

The inmate requests to be issued his orthopedic work boots or to be transferred to an institution where they
are allowed.

## FINDINGS

### I

The inmate disputes the withholding of his orthopedic work boots since his arrival at PBSP due to the
security concerns they allegedly present.  The inmate claims he requires the boots due to a mobility
impairment which were prescribed by a podiatrist while he was housed at Salinas Valley State Prison.

### II

A CDC 128-C, medical chrono and CDC 1845, Disability Program Placement (DPP) Verification both dated
September 27, 2006 authorizes the inmate to use insoles in state approved shoes for the duration of one year
and indicates he has been removed him from the DPP due to not having a long term disability, but rather a
treatable mild medical condition.

## DETERMINATION OF ISSUE

Department Operations Manual, Chapter 5, Article 43, Inmate Property, Section 54030.17.1, Authorized
Personal Property Schedule limits inmate's personal shoes to shower shoes, slippers and tennis shoes unless
medically authorized otherwise.  The inmate has failed to provide any evidence demonstrating that these
orthopedic work boots which happen to have a metal shank in the sole are medically authorized to warrant
their issuance regardless of where he is housed, therefore, the APPEAL IS DENIED.  Additionally, the boots
have been disposed of in accordance with the California Code of Regulations Section 3191 (c) as the inmate
failed to designate a method for their disposition.

Supplement Page 2
Taylor, E-13981
Appeal # PBSP-A-06-02792

## MODIFICATION ORDER

No modification of this action or decision is required.

ROBERT A. HOREL
Warden
Pelican Bay State Prison

BDS #46 1-16-07

§ 3357                 DEPARTMENT OF CORRECTIONS AND REHABILITATION                 **TITLE 15**

officer or the chief psychiatrist for the parolee's return to depart-ment custody for emergency treatment.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. Amendment of section heading and text filed 7-2-93; operative 8-2-93 (Register 93, No. 27).
2. Amendment of section heading and subsection (a) filed 2-17-95 as an emergency; operative 3-1-95 (Register 95, No. 9). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Code and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 8-8-95 or emergency language will be repealed by operation of law on the following day.
3. Amendment of section heading and subsection (a) refiled 8-7-95 as an emergency; operative 8-7-95 (Register 95, No. 32). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Code and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 1-16-96 or emergency language will be repealed by operation of law on the following day.
4. Reinstatement of section as it existed prior to emergency amendment filed 2-17-95 by operation of Government Code section 11346.1(f) (Register 96, No. 8).
5. Amendment of section heading and subsection (a) filed 2-21-96 as an emergency; operative 2-21-96 (Register 96, No, 8). A Certificate of Compliance must be transmitted to OAL by 6-20-96 or emergency language will be repealed by operation of law on the following day.
6. Certificate of Compliance as to 2-21-96 order transmitted to OAL 6-18-96 and filed 7-9-96 (Register 96, No. 28).

### 3357. Inmate Deaths.

(a) The institution head shall maintain a valid service agreement with local mortuaries to provide services such as cremation, transportation, and/or other services related to the disposition of a deceased inmate's body.

(b) When an inmate's death occurs away from an institution/ facility, the body of the deceased shall, unless the county coroner orders otherwise, be released to a licensed funeral director in the community where the death occurred.

(c) If the deceased is known to have had a communicable disease which presents a threat to the public health and safety, health care staff shall notify the contract mortuary and public agencies as required by California Code of Regulations, Title 17, Section 2500, and Health and Safety Code Sections 1797.188 and 1797.189.

(d) A chaplain of the decedent's professed faith may perform a ceremony in accordance with that faith.

(e) Staff shall review the decedent's central file and locate the current CDC Form 127 (Rev. 05/00), Notification in Case of Inmate Death, Serious Injury, or Serious Illness to identify the inmate's next of kin or person(s) to be notified, and to determine the existence of a will.

(f) Staff shall attempt to notify individual(s) listed on the CDC Form 127 as the person(s) to be notified of the death, in person, or, if personal contact is not practical, by telephone. Staff shall send a telegram notification to the next of kin, person(s) to be notified as listed on the CDC Form 127, and/or legally appointed representative, offering consolation, which shall include:

(1) The name and address of the funeral director to whom the body has been or will be released;

(2) A request for instructions on disposition of the body at the family's or designee's expense, within 48 hours, to preclude disposition by the state; and

(3) The name and telephone number of a staff member who may be contacted for additional information.

(g) If after 10 days the next of kin or legally appointed representative fails to claim or direct disposition of the decedent's body, or notifies the department within ten days that he or she does

not assume responsibility for burial without expense to the state, the decedent shall be considered unclaimed. If the body is unclaimed, the institution/facility shall make arrangements for use of state materials or services as necessary in accordance with Penal Code section 5061. All money and personal property shall be inventoried and released in accordance with Penal Code 5061, upon direction from the Associate Warden of Business Services or other staff designated by the institution head.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2082, 5021, 5022, 5054 and 5061, Penal Code; Sections 1797.188, 1797.189, 7104, 7200, 7201, and 7302, Health and Safety Code; and Sections 12525, 27491, 27491.2 and 27491.3, Government Code.

HISTORY:

1. Amendment filed 7-16-92; operative 8-15-92 (Register 92, No. 29).
2. Amendment of subsections (b), (c), (f) and Note filed 2-17-95 as an emergency; operative 3-1-95 (Register 95, No. 9). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Code and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 8-8-95 or emergency language will be repealed by operation of law on the following day.
3. Amendment of subsections (b), (c), (f) and Note refiled 8-7-95 as an emergency; operative 8-7-95 (Register 95, No. 32). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Cotle and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 1-16-96 or emergency language will be repealed by operation of law on the following day.
4. Reinstatement of section as it existed prior to emergency amendment filed 2-17-95 by operation of Government Code section 11346.1(f) (Register 96, No. 8).
5. Amendment of subsections (b), (c), (f), and Note filed 2-21-96 as an emergency; operative 2-21-96 (Register 96, No. 8). A Certificate of Compliance must be transmitted to OAL by 6-20-96 or emergency language will be repealed by operation of law on the following day.
6. Certificate of Compliance as to 2-21-96 order transmitted to OAL 6-18-96 and filed 7-9-96 (Register 96, No. 28).
7. Amendment of section and Note filed 8-28-2000; operative 9-27-2000 (Register 2000, No. 35).

### 3358. Artificial Appliances.

(a) Appliance Categories. Appliances include but are not limited to eyeglasses, artificial eyes, dental prosthesis, artificial limbs, orthopedic braces and shoes, and hearing aids. An inmate's need for such appliance shall be based on medical necessity as described in section 3350(b)(1).

(b) Possession of Appliance. No inmate shall be deprived of a prescribed orthopedic or prosthetic appliance in the inmate's possession upon arrival into the department's custody or properly obtained while in the department's custody unless a department physician or dentist determines the appliance is no longer needed and the inmate's personal physician, if any, concurs in that opinion. When gold is removed from an inmate's mouth, the inmate shall sign a CDC Form 238, Receipt for Dental Gold Removed from Inmate's Mouth, and select a method of disposal indicated on the form.

(c) Purchase of Appliance. Prescribed appliances shall be provided at state expense if an inmate is indigent, otherwise the inmate shall purchase prescribed appliances through the department or a vendor of the inmate's choice as directed by the chief medical or dental officer. When a prescribed appliance is to be provided or use of precious metals is necessary and a reasonable substitute is not available or practical to repair, remake, or alter any crown, bridge, or other prosthetic appliance, the inmate shall sign a CDC Form 193, Trust Account Withdrawal Order (Rev. 1/88), to pay for the materials.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

**TITLE 15**    DEPARTMENT OF CORRECTIONS AND REHABILITATION    **§ 3356**

(3) Be waived for the following:

(A) Emergencies: any medical or dental condition for which evaluation and therapy, as determined by health care staff, are immediately necessary to prevent death, severe or permanent disability, or to alleviate or lessen objectively apparent and disabling pain. Signs of objectively apparent and disabling pain may include, but are not limited to, visible injuries, high blood pressure, rapid heart rate, sweating, pallor, involuntary muscle spasms, nausea and vomiting, high fever, and facial swelling. Emergency also includes, as determined by health care staff, necessary crisis intervention for inmates suffering from situational crises or acute episodes of mental illness.

(B) Diagnosis and treatment of communicable disease conditions as outlined in Title 17, Chapter 4, Subchapter 1, Section 2500 of the California Code of Regulations, including human immunodeficiency virus and Acquired Immunodeficiency Syndrome.

(C) Diagnosis and necessary mental health treatment for which there is a clinical determination of mental illness.

(D) Follow-up health care services defined as any request or recommendation by a member of the health care staff to provide subsequent health care services.

(E) Health care services necessary to comply with state law and/or regulations that shall include, but not be limited to, annual testing for tuberculosis.

(F) Reception center health screening and evaluation.

(G) Inpatient services, extended care, or skilled nursing services.

NOTE: Authority cited: Sections 5007.5 and 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:
1. New section filed 9-21-94 as an emergency; operative 9-21-94 (Register 94, No. 38). A Certificate of Compliance must be transmitted to OAL by 1-19-95 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 9-21-94 order transmitted to OAL 1-18-95 and filed 2-27-95 (Register 95, No. 9).

**3355. Health Care Examinations.**

(a) Initial Examination. Every person newly committed or returned to the custody of the Director of Corrections shall be examined by medical staff for contagious diseases, illness, or other health problems within 24 hours of arrival.

(b) Transfers. Inmates received on transfer from other facilities shall be interviewed by health care staff at the receiving facility within 24 hours of arrival. The health record of each new arrival shall be reviewed to determine the need for previously prescribed medications or continuing treatment for unusual or chronic health problems. Sending facility health care staff shall notify the receiving facility and any anticipated layover facilities regarding any inmate's need, as in the case of diabetics, for maintenance medications while en route and after arrival.

(c) Camp Assignment. Inmates shall be personally screened by a medical officer before receiving medical clearance for assignment to a camp or firefighting assignment. Such inmate shall be in generally good health and physically capable of strenuous and prolonged heavy labor without danger to the inmate's health and safety or the safety of others when involved in hazardous work such as forest firefighting. Exceptions: An inmate may be assigned to light duty, nonhazardous work in a camp if a department physician specifically approves such assignment.

(d) Releases. Each inmate shall be personally screened by health care staff prior to release to parole or discharge from a facility. Staff conducting such screening shall alert the inmate's parole agent regarding any current health problems and shall provide the inmate with any necessary maintenance medication until the releasee can obtain medication in the community.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:
1. Amendment filed 7-2-93; operative 8-2-93 (Register 93, No. 27).
2. Amendment of section heading and subsections (b) and (d) filed 2-17-95 as an emergency; operative 3-1-95 (Register 95, No. 9). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Code and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 8-8-95 or emergency language will be repealed by operation of law on the following day.
3. Amendment of section heading and subsections (b) and (d) refiled 8-7-95 as an emergency; operative 8-7-95 (Register 95, No. 32). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Code and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 1-16-96 or emergency language will be repealed by operation of law on the following day.
4. Reinstatement of section as it existed prior to emergency amendment filed 2-17-95 by operation of Government Code section 11346.1(f) (Register 96, No. 8).
5. Amendment of section heading and subsections (b) and (d) filed 2-21-96 as an emergency; operative 2-21-96 (Register 96, No. 8). A Certificate of Compliance must be transmitted to OAL by 6-20-96 or emergency language will be repealed by operation of law on the following day.
6. Certificate of Compliance as to 2-21-96 order including amendment of subsection (b) transmitted to OAL 6-18-96 and filed 7-9-96 (Register 96, No. 28).

**3355.1. Dental Examinations.**

(a) Reception Centers. Inmates shall, during screening at a reception center, be provided only limited dental services necessary to meet basic needs. Such services shall include but are not limited to treatment of injuries, acute infection, severe pain, or spontaneous bleeding, and repairs to dental prosthetic appliances.

(b) Assigned Facility. Each newly committed inmate shall within 14 days following transfer from a reception center to a program facility receive a complete examination by a dentist who shall develop an individual treatment plan for the inmate.

(1) When a treatment plan is proposed, the inmate shall be provided an explanation of its advantages and disadvantages.

(2) Each inmate's dental health history shall be documented at the time of initial examination and signed by the inmate and witnessed by a dental staff member. Such history shall be available and updated at each dental visit.

(3) An inmate unwilling to practice personal oral hygiene shall receive only that care necessary to relieve pain or treat infection. Routine treatment of nonacute oral conditions resulting from the inmate's neglect shall not be undertaken.

(c) Reexamination. Each inmate under 50 years of age shall be examined at least once every two years. All other inmates shall be examined annually.

(d) Restraints. If an inmate requiring dental treatment also requires use of restraint gear, such restraints shall be selected to enable sitting in a dental chair and shall remain in place during the treatment. Exceptions require concurrence of the dentist, the escorting officer, and a lieutenant.

HISTORY:
1. New section filed 7-2-93; operative 8-2-93 (Register 93, No. 27).

**3356. Health Care Treatment for Parolees.**

(a) Community Treatment. Health care for parolees shall normally be provided by private physicians and community medical facilities, as desired by the parolee and at the parolee's own expense.

(b) Facility Treatment. When a parolee requires medical, surgical, psychiatric, or dental care of an emergency nature and community resources are not available or lack the security required for retention and treatment of the parolee, the parole district administrator may arrange with the facility chief medical or dental

**54030.10.10    Membership Cards**

Inmates shall not possess any membership cards, identification cards, or service-type cards other than those issued by the Department.

**54030.10.11    Contraband**

Anything not permitted, or in excess of the maximum quantity permitted, or no longer functioning as designed, or that have been modified or tampered with, or which is received or obtained from an unauthorized source is contraband. Possession of contraband may result in disciplinary action and confiscation of the contraband (CCR 3006).

The inmate shall be given a written notice for any item(s) of personal and authorized state-issued property that is removed from their quarters during an inspection/search and the disposition made of such property. The notice shall also list any contraband or any breach of security noted during the inspection/search.

**54030.11    Health Care Appliances**

Approval for an inmate to permanently or temporarily possess or retain a health care appliance requires a clinical prescription for the appliance and shall be documented on a CDC Form 128C Medical, Psych, Dental, Chrono.

Inmates shall be allowed to retain possession of a prescribed health care appliance until a health care evaluation is performed providing that safety and security of the institution/facility will not be compromised. Health care appliances are not subject to the six cubic foot volume limitation, nor count towards the two-appliance limit as described in Section 54030.8.

Approved health care appliances include durable medical equipment, assistive devices, adaptive equipment, prosthetic or orthotic appliances, or equipment or medical support equipment, which include, but are not limited to:

Eyeglasses.

Prosthetic Eyes.

Dental prosthesis.

Prosthetic limbs.

Orthopedic braces or shoes.

Hearing aids.

Wheelchairs.

Canes.

**54030.11.1    Disallowance of Health Care Appliances**

Following review and/or inspection of the appliance, should custody supervisor determine that a significant safety or security concern appears to exist, the institution Health Care Manager, Chief Medical Officer, Chief Physician and Surgeon, or Chief Dentist, Correctional Health Services Administrator, or Physician on Call, or Medical Officer of the Day shall be c lted immediately to determine actions required to safely accommodate the affected inmate-patient's needs. Accommodation appropriate to the safety and security of the institution may include, but should not be considered limited to:

Modification of the appliance. If this alternative is chosen, equivalent effective alternative accommodation must be provided the inmate/patient while the original appliance is being modified.

Replacement of the appliance with an acceptable one. If this alternative is chosen, equivalent effective alternative accommodation must be provided the inmate/patient while the alternate appliance is being procured.

Special housing. If this alternative is chosen, and housing in a medical bed is required because of nursing care needs that would not be necessary if the inmate/patient could be allowed an effective appliance, the inmate/patient must be seen as being housed solely on the basis of a disability.

Expedited transfer to a designated institution.

Substitution of non-medical personal services for an appliance (where Inmate Assistant programs have been established) or expedited transfer to an institution where such programs exist.

**54030.12    Property Issuance**

When issuing items of property to an inmate, whether originating from a special purchase or an inmate package, issuing staff are required, at a minimum, to visually observe and physically hand each item of registerable and non-registerable property to the inmate. Staff shall not be responsible for conducting an inventory of non-registerable property during the issuance process.

At the completion of the issuance process, the inmate shall verify that the property is correct as compared with the shipping invoice contained inside the package by signing the staff copy of the shipping invoice. If a discrepancy is identified, the inmate is responsible for showing the discrepancy to staff who shall note the discrepancy on the staff copy of the invoice. One copy of the invoice is retained by the institution/facility for a minimum of one year, and one copy of the invoice is provided to the inmate. While resolution of discrepancies is strictly between the purchaser and the vendor, the copy of the invoice maintained by institutional staff shall serve as verification of any discrepancy claims.

**54030.12.1    Property Registration**

Personal property items which are not consumable, and that possess enough intrinsic value to be a significant target for theft or bartering, are considered registerable property. Registerable personal property is identified in Section 54030.17.

When designated items are identified as registerable, such items must be registered under the inmate's name and number on the CDC Form 160-H, Inmate Property Control Card. Staff shall include the purchase date and purchase price, and attach a copy of the purchase receipt to the CDC Form 160-H, if available.

It is the responsibility of the inmate to account for all registerable property listed on the CDC Form 160-H. Staff shall document property inmates cannot account for on appropriate forms (CDC 128 A, CDC 115).

The inmate, in writing, shall report all registerable property that is lost, stolen, or worn-out to R&R personnel as soon as the loss or unusable wear is discovered. A description of the item(s) and the circumstances surrounding the loss shall be included in the report.

### 54030.12.2    Processing Disapproved Property

Unauthorized inmate personal property, including that which is altered, exceeds volume limitations, or is beyond repair, shall be disposed of in accordance with the provisions of this Section. The institution shall not store unauthorized inmate property except as provided for inmates placed in ASU as provided for in Section 54030.13.2.

Inmates shall sign the CDC Form 1083 indicating their choice of disposition and agreement to the method for disposing of their property. If the inmate makes no selection or has insufficient funds, staff shall document that fact and determine the method of disposition. Unauthorized personal property shall be disposed of as follows:

Mail the item to an address provided by the inmate via United States Postal Service (USPS) or common carrier at the inmate's expense. This option is not available for inmates with insufficient funds in their trust account.

Return the item to the sender via USPS or common carrier at the inmate's expense. This option is not available for inmates with insufficient funds in their trust account.

*NOTE*: Unopened packages received by the institution via USPS or common carrier, for an inmate ineligible to receive a package, may be returned to sender at no expense.

Donate the item to a charitable organization as designated by the institution/facility.

Donate the item to the institution/facility.

Render the item useless and dispose of it according to institution/facility procedures.

Failure to provide an address of an individual willing to accept the personal property will result in the property being donated to a charitable organization, donated to the institution/facility, or render as useless and dispose of per institution/facility procedures. Inmates are not permitted to send their property to any State agency or agent of the State. Failure to comply may result in disciplinary action.

### 54030.13    Movement of Personal Property

The following subsection gives direction, disposition, and processing of inmate property when being transferred, placed in ASU, out-to-court, medical, or extradition.

### 54030.13.1    Transfers

Upon an inmate's transfer between institutions of the Department, the sending institution shall inventory the inmate's property on a CDC Form 1083. R&R staff shall account for all personal property and document the disposition of any property not allowed at the receiving institution. For purposes of inmate transport, canteen and hygiene are included within the six cubic feet of allowable property.

The APPS shall be used as the basis for determination of property decisions. Changes in an inmate's privilege group and volume limitations are addressed in the APPS (Section 54030.17).

When the inmates report to R&R with their personal property, they shall be informed that any item that cannot be transported or will not be accepted at the receiving institution based upon a change to privilege group shall be disposed of by the methods outlined in Section 54030.12.2.

A signed copy of the CDC Form 1083 shall be placed in each box containing the inmate's personal property. A copy shall also be provided to the inmate and a copy retained by the sending R&R and receiving institution to facilitate the resolution of inmate property claims. The receiving institution shall document the disposition of any disallowed property items that were not identified and confiscated by the sending institution.

The CDC Form 143 shall be completed by R&R staff, and a copy shall be provided to transporting staff.

All boxes/containers used to transport inmate property shall not exceed 24" x 24" x 24" maximum dimensions, nor contain in excess of 30 pounds of property each.

All health care appliances belonging to an inmate shall be transported with the inmate upon transfer. Upon an inmate paroling, all health care appliances permanently issued to the inmate shall be retained and maintained by him/her. Health care appliances temporarily issued to the inmate for use during incarceration shall be retained at the institution.

### 54030.13.2    Temporary Placements, Transfers, and Returns

#### Administrative Segregation

Unissued authorized property for inmates on ASU status shall be inventoried by appropriate staff and stored in areas designated for property storage pending the outcome of ASU placement. Property inventory shall be completed in accordance with Section 54030.6.

Upon initial ASU placement, the institution must provide the inmate basic hygiene and writing materials, i.e., fish kit. In addition, the inmate shall be provided access to his/her personal address book and stamps in order to facilitate access to correspondents and the courts.

If the Institution Classification Committee retains the inmate in ASU after initial ASU review, the inmate shall have access to canteen as provided for in Section 54070.7 based upon a schedule determined by the facility. Additionally, the inmate shall have access to all authorized personal property as determined by Section 54030.17.

If the inmate is released back to the general population and maintains his/her original Privilege Group status, the personal property shall be returned to the inmate. If the inmate receives a SHU/PSU term, the inmate shall be required to dispose of all unauthorized property prior to transfer in accordance with Section 54030.12.2.

The property of inmates on temporary transfer status shall be processed as follows:

(C) Material subject to the tests in paragraphs (A) or (B) includes, but is not limited to material that:

(1) Depicts, displays, or describes penetration of the vagina or anus, or contact between the mouth and the genitals.

(2) Depicts, displays, or describes bestiality, sadomasochism, or an excretory function including urination, defecation, or semen.

(3) Portrays the nudity of a minor, or person who appears to be under 18 years old.

(4) Portrays conduct which appears to be non-consensual behavior.

(5) Portrays conduct which is or appears to be forceful, threatening, or violent.

(6) Portrays conduct where one of the participants is a minor, or appears to be under 18 years old.

(16) Material that is reasonably deemed to be a threat to legitimate penalogical interests.

(17) Sexually explicit images that depict frontal nudity in the form of personal photographs, drawings, magazines, or other pictorial format.

(A) Sexually explicit material shall be defined as material that shows the frontal nudity of either gender, including the exposed female breast(s) and/or the genitalia of either gender.

(B) The following sexually explicit material shall be allowed:

1. Departmentally purchased or acquired educational, medical/ scientific, or artistic materials, such as books or guides purchased by the department for inclusion in institution libraries and/or educational areas; or

2. Educational, medical/scientific, or artistic materials, including, but not limited to, anatomy medical reference books, general practitioner reference books and/or guides, National Geographic, or artistic reference material depicting historical, modern, and/or post modern era art, purchased or possessed by inmates and approved by the institution head or their designee on a case-by-case basis.

(18) Any tobacco product, or tobacco cessation product, that contains nicotine.

(d) Anything in the possession of an inmate which is not contraband but will, if retained in possession of the inmate, present a serious threat to facility security or the safety of inmates and staff, shall be controlled by staff to the degree necessary to eliminate the threat.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2600, 2601, 2772, 2790, 4574, 5030.1, 5054 and 5057, Penal Code.

HISTORY:

1. Amendment of subsection (a) filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).

2. Change without regulatory effect amending section filed 10-29-90 pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 6).

3. Editorial correction of printing error in subsection (a) (Register 92, No. 5).

4. New subsection (c) and subsection relettering, renumbering and amendment of former subsections 3136 (a)–(h) to subsections 3006(c)(1)–(8), new subsections 3006(c)(9)–(15), and amendment of newly designated subsection (d) and Note filed 1-3-95 as an emergency; operative 1-3-95 (Register 95, No. 1). A Certificate of Compliance must be transmitted to OAL 6-12-95 or emergency language will be repealed by operation of law on the following day.

5. New subsection (c) and subsection relettering, renumbering and amendment of former subsections 3136(a)–(h) to subsections 3006(c)(1)–(8), new subsections 3006(c)(9)–(15), and amendment of newly designated subsection (d) and Note refiled 6-13-95 as an emergency; operative 6-13-95 (Register 95, No. 24). A Certificate of Compliance must be transmitted to OAL by 11-20-95 or emergency language will be repealed by operation of law on the following day.

6. Reinstatement of section as it existed prior to emergency amendment filed 12-27-95 by operation of Government Code section 11346.1(f). Certificate of Compliance as to 6-13-95 order transmitted to OAL 11-9-95; disapproved by OAL and order of repeal as to 6-13-95 order filed on 12-27-95 (Register 95, No. 52).

7. Amendment of section and Note filed 12-27-95 as an emergency pursuant to Government Code section 11346.1; operative 12-27-95 (Register 95, No. 52). A Certificate of Compliance must be transmitted to OAL by 4-25-96 or emergency language will be repealed by operation of law on the following day.

8. Certificate of Compliance as to 12-27-95 order including amendment of subsections (c), (c)(3), and (c)(9), new subsection (c)(10) and subsection renumbering, amendment of newly designated subsections (c)(11), (c)(14) and (c)(15), new subsections (c)(15)(A)–(c)(15)(C), amendment of newly designated subsections (c)(15)(C)(1) and subsection renumbering, amendment of subsection (d) and Note transmitted to OAL 4-25-96 and filed 6-6-96 (Register 96, No. 23).

9. New subsections (c)(17)–(c)(17)(B)2. filed 9-30-2002 as an emergency pursuant to Penal Code section 5058.3; operative 9-30-2002 (Register 2002, No. 40). A Certificate of Compliance must be transmitted to OAL by 3-10-2003 pursuant to Penal Code section 5058.3 or emergency language will be repealed by operation of law on the following day.

10. Certificate of Compliance as to 9-30-2002 order transmitted to OAL 2-3-2003 and filed 3-18-2003 (Register 2003, No. 12).

11. Amendment of first paragraph filed 5-27-2004 as an emergency; operative 5-27-2004 (Register 2004, No. 22). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-3-2004 or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 5-27-2004 order transmitted to OAL 10-28-2004 and filed 12-14-2004 (Register 2004, No. 51).

13. New subsection (c)(18) and amendment of Note filed 7-7-2005 as an emergency; operative 7-7-2005 (Register 2005, No. 27). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 12-14-2005 or emergency language will be repealed by operation of law on the following day.

14. Certificate of Compliance as to 7-7-2005 order transmitted to OAL 12-13-2005 and filed 1-26-2005 (Register 2006, No. 4).

**3007. Sexual Behavior.**

Inmates may not participate in illegal sexual acts. Inmates are specifically excluded in laws, which remove legal restraints from acts between consenting adults. Inmates must avoid deliberately placing themselves in situations and behaving in a manner, which is designed to encourage illegal sexual acts.

Comment: Former DR-1105, sexual behavior.

**3008. Obscenity.**

Inmates may not openly or publicly display photographs, pictures, drawings, or other pictorial representations of persons engaged in sexual acts, actual or simulated, masturbation, excretory functions or lewd exhibitions of the genitals which are obscene as defined in Section 311 of the Penal Code.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. Amendment filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).

2. Certificate of Compliance as to 12-27-95 order including amendment of section and Note transmitted to OAL 4-25-96 and filed 6-6-96 (Register 96, No. 23).

**3009. Gambling.**

Inmates may not participate in any form of gambling or bookmaking.

Comment: Former DR-1107, gambling and bookmaking.

**3010.  Gifts and Gratuities.**

Inmates may not ask for or accept any gift of money, property, material or substance from institution visitors, employees or other persons, and may not give any person a gift or promise of one, except as provided for by law, approved institution procedures, or as specifically authorized by the warden or superintendent. Institution procedures established under this section should be directed toward control of property, safety of persons and institution security.

HISTORY:

1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).

**3011.  State Property.**

Inmates shall not intentionally destroy, damage, deface, alter or misuse state property. To do so shall be cause for disciplinary action and the inmate may be charged for the cost of repair or replacement, including materials and labor. Intentional destruction of state property may result in a credit loss as specified in section 3323(c)(4), 3323(d)(5), or 3323(g)(1) of these regulations. Intentional damage to state property in excess of four hundred dollars may result in criminal prosecution and an additional term of imprisonment in addition to any credit loss resulting from the disciplinary action. Intentional damage to state property valued at four hundred dollars or less may result in a misdemeanor conviction in addition to any credit loss resulting from the disciplinary action.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2932, 4600 and 5054, Penal Code.

HISTORY:

1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).
2. Amendment filed 12-1-78 as an emergency; designated effective 1-1-79 (Register 78, No. 48).
3. Certificate of Compliance filed 2-22-79 (Register 79, No. 8).
4. Order of Repeal filed 6-3-85 by OAL pursuant to Government Code section 11349.7; effective thirtieth day thereafter (Register 85, No. 26).
5. OAL Notice of Erroneous Filing filed 7-29-85; purported Order of Repeal of section 3011(a) filed in error on 6-3-85 is null and void and text of subsection (a) as filed with Secretary of State on 12-1-78 remains in effect uninterrupted (Register 85, No. 31).
6. Amendment filed 12-16-88; operative 1-15-89 (Register 88, No. 53).
7. Change without regulatory effect amending section filed 11-19-97 pursuant to section 100, title 1, California Code of Regulations (Register 97, No. 47).
8. Amendment of section and Note filed 9-25-2000; operative 10-25-2000 (Register 2000, No. 39).

**3012.  Theft.**

Inmates may not obtain anything by theft, fraud or dishonesty.

Comment: Former DR-1110, stealing and dealing.

**3013.  Unlawful Influence.**

Inmates shall not attempt to gain special consideration or favor from other inmates, employees, institution visitors or any other person by the use of bribery, threat or other unlawful means.

Comment: Former DR-1111, improper influence.

**3014.  Calls and Passes.**

Inmates must respond promptly to notices given in writing, announced over the public address system, or by any other authorized means.

Comment: Former DR-1113, answering calls and passes.

HISTORY:

1. Repealer of section 3014 and renumbering of section 3015 to section 3014 filed 9-30-77; effective thirtieth day thereafter (Register 77, No. 40). For former section 3014, see Register 77, No. 9.

**3015.  Unauthorized Areas and Facility Boundaries.**

(a) Every area of a facility which is out of bounds to inmates or which is only out of bounds at specified times shall be clearly designated. Inmates shall not enter such areas unless specifically authorized to do so by staff.

(b) Inmates assigned to a work detail or project off their facility's property shall not go beyond the geographical limits established by their staff escort.

(c) Except as provided in sections 3080 through 3083, Title 15, California Code of Regulations, inmates shall not travel past the boundaries of a facility unless escorted by authorized staff. Inmates shall not be escorted from a facility except in an emergency or when authorized for the purpose of a work or project assignment, transfer to another facility, or temporary community leave or removal.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. Renumbering of section 3016 to section 3015 filed 9-30-77; effective thirtieth day thereafter (Register 77, No. 40).
2. Amendment of section including newly designated subsection (a), new subsection (b), renumbering and amendment of former section 3444 to new subsection (c), and new Note filed 10-27-93; operative 11-26-93 (Register 93, No. 44).

**3016.  Controlled Substances, Drug Paraphernalia, and Distribution.**

(a) Inmates may not inhale, ingest, inject, or otherwise introduce into their body; possess, manufacture, or have under their control any controlled substance, controlled medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff.

(b) Inmates may not possess, exchange, manufacture, or have under their control any paraphernalia as defined by Health and Safety Code section 11014.5, or device related to the use, injection, or manufacture of any controlled substance or controlled medication, except as specifically authorized by the institution's/facility's health care staff.

(c) Inmates shall not distribute, as defined in section 3000, any controlled substance or controlled medication.

(d) Inmates may not possess controlled medication in quantities exceeding the dosage specifically authorized by the institution's/facility's health care staff, nor may an inmate possess controlled medication prescribed to another inmate.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2931, 4573, 4573.6 and 5054, Penal Code; and Sections 11014.5, 11350–11383, Health and Safety Code.

HISTORY:

1. Renumbering of section 3017 to section 3016 filed 9-30-77; effective thirtieth day thereafter (Register 77, No. 40).
2. Amendment filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).
3. Amendment filed 2-17-95 as an emergency; operative 3-1-95 (Register 95, No. 9). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Code and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 8-8-95 or emergency language will be repealed by operation of law on the following day.
4. Amendment refiled 8-7-95 as an emergency; operative 8-7-95 (Register 95, No. 32). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Code and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 1-16-96 or emergency language will be repealed by operation of law on the following day.
5. Reinstatement of section as it existed prior to emergency amendment filed 2-17-95 by operation of Government Code section 11346.1(f) (Register 96, No. 8).
6. Amendment filed 2-21-96 as an emergency; operative 2-21-96 (Register 96, No. 8). A Certificate of Compliance must be trans-

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _Tracy Taylor_ , declare:

I am over 18 years of age and a party to this action. I am a ~~resident~~ Prisoner of _____

_____ Pelican Bay State _____ Prison,

in the county of _Del Norte_ ,

State of California. My prison address is: _B-facility ; P.O. Box 7000,_

_Crescent City, California 95531_

On _April_ _____
      (DATE)

I served the attached: _Request for inspection of property, and Request_

_for Admissions with accompanying Exhibits 1- thru-11A_
                  (DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

Michael Sayre, M.D. (Chief Medical Officer)    Office of the Clerk, U.S. District Court
5905 Lake Earl Drive                            Northern District of California
P.O. Box 7000                                      450 Golden Gate Avenue
Crescent City, Ca 95531                          San Francisco, Ca 94102

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _April, 17, 2008_                 _____
            (DATE)                            (DECLARANT'S SIGNATURE)

Civ-69 (Rev. 9/97)                              ::ODMA\PCDOCS\WORDPERFECT\22832\1

NAME: _Tracy_ _Taylor_

CDC NO: _E-13481_  HOUSING: _____

PELICAN BAY STATE PRISON
P.O. BOX 7500
CRESCENT CITY, CA 95532

**RECEIVED**

APR 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

MHP

PELICAN BAY STATE PRISON
5905 Lake Earl Dr.
Crescent City CA 95532



02 1M          $ 0
0004217666     APF
MAILED FROM ZIP CO




UNITED STATES POSTAGE

PELICAN BAY
G.P.
UNIT B-8

OFFICE OF THE CLERK, U.S. DISTRICT
NORTHERN DISTRICT OF CALIFO

450 Golden Gate Avenu

San Francisco, Ca 94102

AY STATE PRISON
00
CITY, CA 95532

LEGAL MAIL

RECEIVED

APR 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

MHP

PELICAN BAY
G.P.
UNIT B-8

OFFICE OF THE CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

450 Golden Gate Avenue

San Francisco, Ca 94102